# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| F.T. PRODUCE, INC. d/b/a FAMILY TREE PRODUCE,<br><br>                        Plaintiff,<br>vs.<br><br>AGWA, INC. d/b/a NORTH PARK PRODUCE CHULA VISTA; JAMIL A. NEHME; SHELDEN J. NEHME; ROSETTE J. SOWELL,<br><br>                        Defendants. | CASE NO. 11-CV-102 JLS (WVG)<br><br>**ORDER: (1) GRANTING PLAINTIFF'S EX PARTE APPLICATION FOR TEMPORARY RESTRAINING ORDER WITHOUT NOTICE; (2) SETTING HEARING ON PRELIMINARY INJUNCTION**<br><br>(Doc. No. 4) |

Presently before the Court is Plaintiff's ex parte application for a temporary restraining order (TRO) without notice and for a preliminary injunction hearing. (Doc. No. 4.) For the reasons stated herein, Plaintiff's application is **GRANTED**.

## BACKGROUND

Plaintiff is a California corporation "engaged in the business of buying and selling wholesale quantities of perishable agricultural commodities . . . in interstate commerce." (Doc. No. 1 (Compl.) ¶ 3.) Defendants are a California limited liability corporation "engaged in the business of buying wholesale quantities of produce in interstate commerce" and its officers. (*Id.* at ¶¶ 4(a), (b).) According to Plaintiff, between November 6, 2010 and December 18, 2010, Plaintiff sold and delivered to Defendants, in interstate commerce, wholesale amounts of produce in the amount of

$66,425.33. (*Id.* at ¶ 6; Doc. No. 4-2 (Guzman Decl. ISO Appl.) ¶ 7.) Plaintiff alleges that the entire amount remains outstanding. (Compl. ¶ 6.) Plaintiff further alleges that, in response to a demand letter, Defendants advised that they are unable to pay the $66,425.33 owed because of cash flow problems. (Guzman Decl. ISO Appl. ¶ 10.) Defendant Jamil Nehme advised Plaintiff's president that "the only way he could pay [Plaintiff] is if [Plaintiff] agreed to allow him to pay the debt off over" one year. (*Id.*) Plaintiff's president informed Mr. Nehme that the proposed payment schedule "was not acceptable and demanded full payment." (*Id.*)

## LEGAL STANDARD

TROs are governed by the same standard applicable to preliminary injunctions. *See New Motor Vehicle Bd. of Cal. v. Orrin W. Fox Co.*, 434 U.S. 1345, 1347 n.2 (1977) (Rehnquist, J.). "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Natural Res. Def. Council, Inc. (NRDC)*, — U.S. —, 129 S. Ct. 365, 374 (2008) (citing *Munaf v. Geren*, 553 U.S. 674, 128 S. Ct. 2207, 2218–19 (2008)); *see also Am. Trucking Ass'ns, Inc. v. City of L.A.*, 559 F.3d 1046, 1052 (9th Cir. 2009). This is an "extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *NRDC*, 129 S.Ct. at 376. This "clear showing" requires Plaintiff to show more than a mere "possibility" of irreparable harm, but instead he must "demonstrate that irreparable injury is *likely* in the absence of an injunction." *Id.* at 375 (emphasis in original); *Am. Trucking Ass'ns*, 559 F.3d at 1052.

When a plaintiff has not provided notice of her application to the defendant, Federal Rule of Civil Procedure 65(b)(1) imposes additional requirements prior to the issuance of a TRO:

> The court may issue a temporary restraining order without written or oral notice to the adverse party or its attorney only if: (A) specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition; and (B) the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required.

Fed. R. Civ. P. 65(b)(1). "The stringent restrictions imposed . . . by Rule 65[] on the availability of ex parte temporary restraining orders reflect the fact that our entire jurisprudence runs counter to the notion of court action taken before reasonable notice and an opportunity to be heard has been granted

both sides of a dispute." *Granny Goose Foods, Inc. v. Bhd. of Teamsters*, 415 U.S. 423, 438–39 (1974) (footnote omitted).

Accordingly, "courts have recognized very few circumstances justifying the issuance of an ex parte TRO." *Reno Air Racing Ass'n v. McCord*, 452 F.3d 1126, 1131 (9th Cir. 2006). "For example, an ex parte TRO may be appropriate 'where notice to the adverse party is impossible either because the identity of the adverse party is unknown or because a known party cannot be located in time for a hearing.'" *Id.* (quoting *Am. Can Co. v. Mansukhani*, 742 F.2d 314, 322 (7th Cir. 1984)). Alternatively, "[i]n cases where notice could have been given to the adverse party, courts have recognized a 'very narrow band of cases in which ex parte orders are proper because notice to the defendant would render fruitless the further prosecution of the action.'" *Id.* (quoting *Am. Can Co.*, 742 F.3d at 322).

## ANALYSIS

Plaintiff contends that Defendants are in violation of their statutory duties under the Perishable Agricultural Commodities Act (PACA), 7 U.S.C. §§ 499a–499t. (*See generally* Compl.) Plaintiff further contends that a TRO is necessary to prevent dissipation of PACA trust assets pending a hearing. (Doc. No. 4-1 (Mem. ISO Appl. 3–5); Guzman Decl. ISO Appl. ¶ 12.)

**1.    PACA**

"Congress enacted PACA in 1930 to promote fair trading practices in the produce industry." *Tanimura & Antle, Inc. v. Packed Fresh Produce, Inc.*, 222 F.3d 132, 135 (3d Cir. 2000); *accord Frio Ice, S.A. v. Sunfruit, Inc.*, 918 F.2d 154, 155 (11th Cir. 1990). In 1984, Congress amended PACA to provide for a statutory trust under which a produce buyer holds its produce-related assets as a fiduciary until full payment is made to the produce seller. *Tanimura*, 222 F.3d at 135–36 (citing 7 U.S.C. § 499e(c)). "This trust is created by operation of law upon the purchase of such goods, and the produce buyer is the statutory trustee." *Tanimura*, 222 F.3d at 136; *accord* 7 U.S.C. § 499e(c)(2). An unpaid seller loses the benefits of the trust unless it gives written notice of its intent to preserve its rights with the United States Department of Agriculture and the produce buyer within thirty days after payment is due. 7 U.S.C. § 499e(c)(3); *Tanimura*, 222 F.3d at 136. Alternatively, the unpaid seller may provide notice of intent through its ordinary and usual billing or invoice statements. 7 U.S.C. §

499e(c)(4); *Tanimura*, 222 F.3d at 136.

Failure to maintain the trust and promptly make full payment to the trust beneficiary is unlawful. 7 U.S.C. § 499b(4). Produce dealers must "maintain trust assets in a manner that such assets are freely available to satisfy outstanding obligations to sellers of perishable agricultural commodities," and "[a]ny act or omission which is inconsistent with this responsibility, including dissipation of trust assets" is proscribed. 7 C.F.R. § 46.46(d)(1).

**2.    Propriety of a TRO Without Notice**

*A.    Likelihood of Success on the Merits*

Plaintiff appears entitled to enforce the PACA trust provisions and regulations to secure its trust claim for $66,425.33. First, Plaintiff is a supplier or seller of wholesale quantities of produce and is licensed under PACA. (Guzman Decl. ISO Appl. ¶ 3; *id.* Ex. 1 (PACA license).) Second, Plaintiff sold to Defendants, in interstate commerce, wholesale quantities of produce in the aggregate amount of $66,425.33, which is allegedly past due and unpaid. (*Id.* ¶¶ 9–10; Compl. ¶ 6; *see* 7 U.S.C. § 499e(2).) Third, Plaintiff preserved its interest in the statutory trust by providing notice of intent to preserve its rights through its ordinary and usual billing or invoice statements. (Guzman Decl. ISO Appl. ¶ 9; *id.* Ex. 4 (invoices to Defendants); *see* 7 U.S.C. § 499e(4).) Fourth, Defendants have advised Plaintiff that they are unable to promptly make payment of the amount owed. (Guzman Decl. ISO Appl. ¶ 10; *see* 7 U.S.C. § 499b(4).)

*B.    Irreparable Harm*

Plaintiff also appears likely to suffer irreparable harm in the absence of preliminary relief. Plaintiff's president declares, under penalty of perjury, that "[u]nless the assets of the defendant corporation are frozen, it is likely that the trust assets will continue to be dissipated. As a result, [Plaintiff] will suffer immediate and irreparable harm because it will lose the trust assets and rights that are owed under the statute." (Guzman Decl. ISO Appl. ¶ 12.) Dissipation of the trust assets would cause Plaintiff irreparable injury because Plaintiff would not be able to recover the trust assets and would forever be excluded as a beneficiary of the statutory trust. *See Tanimura*, 222 F.3d at 140–41; *Frio Ice*, 918 F.2d at 159.

//

### C. Balance of Equities and Public Interest

The balance of equities and public interest also militate in favor of a TRO. Enjoining Defendants from dissipating trust assets only requires Defendants to fulfill the statutory duties PACA imposes. *See Tanimura*, 222 F.3d at 140. Further, PACA is intended to remedy the burden on commerce caused by welching produce buyers and to "protect the public interest". 7 U.S.C. § 499e(c)(1).

### D. Federal Rule of Civil Procedure 65(b)(1)

Finally, Plaintiff has satisfied the additional requirements for a TRO without notice. The Court concluded *supra* that Plaintiff is likely to suffer irreparable harm in the absence of preliminary relief. The harm is imminent, Plaintiff's president opines, because Defendants are currently dissipating trust assets. (Guzman Decl. ISO Appl. ¶ 11; *see* Fed. R. Civ. P. 65(b)(1)(A).) Further, Plaintiff's counsel certifies in writing that "[a]dvising Defendants of the pendency of this motion will allow Defendants to continue to pay non-trust debts with trust assets . . . in order to avoid serious personal liabilities." (Doc. No. 4-3 (Lewin Certification ISO Appl.) 2; *see* Fed. R. Civ. P. 65(b)(1)(B).) Plaintiff's counsel also opines that notice to Defendants would render fruitless the further prosecution of the action because "once trust assets are dissipated, it is all but impossible to recover them." (Lewin Certification ISO Appl. 2; *see Reno Air Racing*, 452 F.3d at 1131.)

### CONCLUSION

For the reasons stated, Plaintiff's application for a TRO without notice is **GRANTED**. Bond shall be waived in light of the fact that Defendants currently hold $66,425.33 of Plaintiff's assets.

**IT IS HEREBY ORDERED:**

*(1)* That Defendants, their counsel, agents, officers, assigns, or representatives be and hereby are restrained and enjoined pending the hearing and determination of Plaintiff's motion for preliminary injunction from:

(a) Removing, withdrawing, transferring, assigning, or selling to any other person or entity, the proceeds from the sales of any or all existing or future inventories of food or other products derived from perishable agricultural commodities as defined in PACA, 7 U.S.C. § 499a(b), or receipts of payment for such

agricultural commodities sold prior to the date of this order, provided, however that Defendants may sell perishable agricultural commodities or products derived from perishable agricultural commodities for fair compensation without right of set-off, on the condition that defendants maintain the proceeds of such sale subject to this Order;

    (b)    Taking any other action which causes dissipation of Plaintiff's interest in PACA trust assets; or

    (c)    Taking any action that violates the provisions of 7 U.S.C. § 499b(4).

*(2)* Plaintiff shall forthwith serve Defendants and their counsel with copies of all documents filed in this matter, including the complaint, the application, and a copy of this Order. Plaintiffs shall electronically file proof of service not later than **4:00 p.m. on January 24, 2011**.

*(3)* This Order shall be binding upon the parties to this action and all other persons or entities who receive actual notice of this Order by personal service or otherwise.

*(4)* The $66,425.33 in PACA trust assets belonging to Plaintiff and in the possession of Defendants will serve as plaintiff's security for this injunction as required by Federal Rule of Civil Procedure 65(c).

*(5)* A hearing to show cause why a preliminary injunction should not issue in this case is set for hearing on **Tuesday, February 1, 2011 at 9:30 a.m.** in Courtroom 6 of the Edward J. Schwartz United States Courthouse, 940 Front Street, San Diego, California 92101. Defendants **SHALL FILE** an opposition to the imposition of a preliminary injunction not later than **January 27, 2011 at 4:00 p.m.** Plaintiff may file a reply memorandum not later than 10:00 a.m. on January 31, 2011.

**IT IS SO ORDERED.**

DATED: January 21, 2011

*Janis L. Sammartino*
Honorable Janis L. Sammartino
United States District Judge